UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINAYAK SAVANT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IROBOT CORPORATION, GLEN D. WEINSTEIN, GARY S. COHEN, JULIE ZEILER, and KARIAN WONG,<br><br>Defendants. | Case No.  1:25-cv-05563-JHR [rel. 1:25-cv-06625-JHR] |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF RITA LAZARO AND
VINAYAK SAVANT FOR APPOINTMENT AS CO-LEAD PLAINTIFFS
AND APPROVAL OF LEAD COUNSEL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT.......................................................................................................................... 6

I.    LAZARO AND SAVANT SHOULD BE APPOINTED CO-LEAD PLAINTIFFS ......... 6

      A.    Lazaro and Savant Are Willing to Serve as Class Representatives ........................ 7

      B.    Lazaro and Savant Have the "Largest Financial Interest" in the Action ................ 7

      C.    Lazaro and Savant Otherwise Satisfy the Requirements of Rule 23 ...................... 8

      D.    Lazaro and Savant Will Fairly and Adequately Represent the Interests of the
           Class and Are Not Subject to Unique Defenses...................................................... 12

II.   CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED... 13

CONCLUSION..................................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
  No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ...................................9

*Barnet v. Elan Corp., PLC*,
  236 F.R.D. 158 (S.D.N.Y. 2005) ...............................................................................................11

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
  141 F.R.D. 229 (S.D.N.Y. 1992) ...............................................................................................10

*Chahal v. Credit Suisse Grp. AG*,
  No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018)............................8

*Dookeran v. Xunlei Ltd.*,
  No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) ......................................10

*Fischler v. AMSouth Bancorporation*,
  No. 96-1567-Civ-T-17A, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997).....................................9

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ...............................................................................................10

*Gluck v. CellStar Corp.*,
  976 F. Supp. 542 (N.D. Tex. 1997) .............................................................................................9

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
  No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017).................11, 12

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..................................................................................................8, 11

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..........................8

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992).........................................................................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
  233 F.R.D. 147 (D. Del. 2005) ..................................................................................................13

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) .........................................................................................8, 9

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ....................................9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ....................................................................................9

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010) ...............................................................................10

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ...................................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) ...............................................................................13

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)...........................................................................8

*Lax v. First Merchants Acceptance Corp.*,
 No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997).........................................8

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) ................................12

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ........8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ................................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008).........................................................................13

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
No. CIV.A. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ........................12

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) ...............................................................................11

## Statutes

15 U.S.C. § 78u-4 ............................................................................................................1, 6

Private Securities Litigation Reform Act of 1995 .................................................... *passim*

Securities Exchange Act of 1934.................................................................................1, 7, 10

iii

**<u>Rules</u>**

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

Rita Lazaro and Vinayak Savant (together, "Lazaro and Savant") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Lazaro and Savant as Co-Lead Plaintiffs on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired iRobot Corporation ("iRobot" or the "Company") securities between January 29, 2024 and March 11, 2025, both dates inclusive (the "Class Period"); and (2) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. iRobot investors, including Lazaro and Savant, incurred losses following the disclosure of Defendants' alleged fraud, which caused iRobot's share price to fall sharply, damaging Lazaro, Savant, and other iRobot investors.

Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Lazaro and Savant collectively incurred losses of approximately $75,889 in connection with their Class Period transactions in iRobot securities. *See* Declaration of J. Alexander Hood II in Support of Motion ("Hood Decl."), Exhibit ("Ex.") A. Accordingly, Lazaro and Savant believe that they have the largest financial interest in the relief sought in this Action. Beyond their financial interest, Lazaro and Savant also meet the

applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their obligations as Co-Lead Plaintiffs and vigorously prosecute the Action on behalf of the Class, Lazaro and Savant have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Lazaro and Savant respectfully request that the Court enter an Order appointing them as Co-Lead Plaintiffs for the Class and approving their selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint in the Action, iRobot designs, builds, and sells robots and home innovation products in the U.S., Europe, the Middle East, Africa, Japan, and internationally. The Company's portfolio of home robots and smart home devices features proprietary technologies for the connected home and advanced concepts in cleaning, mapping and navigation. iRobot is primarily known for its robot vacuum cleaner ("RVC") products sold under the "Roomba" brand name.

While iRobot's Roomba was the first commercially successful RVC, iRobot's business has steadily declined over the past decade, apart from a brief sales bump during the COVID-19 pandemic. Competitors from China undercut the luxury-priced Roomba, while other consumer electronics firms like Samsung and SharkNinja introduced their own RVCs. By 2016, iRobot's market share had dropped to 64% in 2016, and then to only 46% by 2020.

Investors believed that iRobot was saved when, in August 2022, iRobot entered into a merger agreement with Amazon.com, Inc. ("Amazon") pursuant to which Amazon would acquire iRobot for $61 per share in an all-cash transaction valued at approximately $1.7 billion (the "Amazon Acquisition"). In a joint press release announcing the Amazon Acquisition, iRobot's then Chief Executive Officer ("CEO") Colin Angle was quoted as stating, in relevant part, "Amazon shares our passion for building thoughtful innovations that empower people to do more at home, and I cannot think of a better place for our team to continue our mission. I'm hugely excited to be a part of Amazon and to see what we can build together for customers in the years ahead."

However, in January 2024, Amazon and iRobot announced that they had mutually agreed to terminate the Amazon Acquisition, citing regulatory concerns. Specifically, the companies stated that there was "no path to regulatory approval in the European Union" and reports circulated that the U.S. Federal Trade Commission was in the process of drafting a lawsuit that would seek to stop the deal. Concurrent with this announcement, iRobot also reported that Colin Angle would step down from his role as CEO, and that the Company would be cutting approximately 350 employees, representing 31% of iRobot's workforce.

Notwithstanding the termination of the Amazon Acquisition and the subsequent job cuts, the Company has consistently maintained that it is "confident in [its] ability to build on [its] legacy of innovation as a standalone company and to navigate this period successfully." Moreover, in the wake of the Amazon Acquisition's termination, iRobot touted that it would be implementing an operational restructuring plan (the "Restructuring Plan")—which the Company has sometimes referred to as "iRobot Elevate"—"designed to position the Company for stabilization in the current environment, while focusing on profitability and advancing key

3

growth initiatives to extend its market share in the mid-tier and premium segments." The Restructuring Plan, according to the Company, would "enable [it] to chart a new strategic path for sustainable value creation."

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) iRobot overstated the extent to which the Restructuring Plan would help the Company maintain stability after the termination of the Amazon Acquisition; (ii) as a result, it was unlikely that iRobot would be able to profitably operate as a standalone company; (iii) accordingly, there was substantial doubt about the Company's ability to continue as a going concern; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

On March 12, 2025, iRobot issued a press release reporting its fourth quarter and full year 2024 financial results. For the quarter, iRobot reported a loss of $2.06 per share on revenue of $172 million, representing a 44% year-over-year decline. iRobot also cautioned investors that "there can be no assurance that [iRobot's] new product launches will be successful due to potential factors, including, but not limited to consumer demand, competition, macroeconomic conditions, and tariff policies." Accordingly, "[g]iven these uncertainties and the implication they may have on the Company's financials, there is substantial doubt about the Company's ability to continue as a going concern for a period of at least 12 months from the date of the issuance of its consolidated 2024 financial statements." In addition, the press release stated that, in light of the foregoing developments, iRobot was cancelling its fourth-quarter and full-year 2024 results conference call and webcast, and that the Company would not be providing a 2025 outlook.

4

Market analysts were quick to comment on iRobot's announcement.  For example, on March 12, 2025, an analyst from *Seeking Alpha* downgraded iRobot to a sell rating from a hold rating "due to [a] bleak outlook," stating that "iRobot's business prospects have deteriorated significantly since the Amazon acquisition fell through, leading to massive layoffs and growing losses," "Q4 earnings were disastrous, missing guidance and showing worsening gross margins due to excess inventory and lower sales volumes," "iRobot's future is uncertain, with substantial doubts about its viability within the next 12 months, despite ongoing discussions with its primary lender," and that the Company's "survival hinges on new Roombas being a hit, which seems unlikely."  That same day, in an article entitled "Why iRobot Stock Is Crashing Today," *The Motley Fool* stated, in relevant part, that "iRobot's costly restructuring efforts -- including a 50% workforce reduction -- have yet to yield stability."

On this news, iRobot's stock price fell $3.255 per share, or 51.58%, over the following two trading sessions, to close at $3.055 per share on March 13, 2025.

After the end of the Class Period, in May 2025, iRobot experienced a short squeeze—*i.e.*, a rapid increase in the price of a stock owing primarily to an excess of short selling of a stock rather than underlying fundamentals—after it was announced that U.S. tariffs on European Union imports would be delayed until July 2025.  However, notwithstanding the increase in the Company's stock price, market analysts noted that iRobot's underlying fundamentals remained highly concerning.  For example, on May 29, 2025, *Seeking Alpha* stated that iRobot's "[t]echnical indicators have turned bullish short-term, but the company's cash burn and deteriorating financials outweigh these positives" and "Q1 [2025] results revealed falling revenue, worsening losses, shrinking cash reserves, and declining gross margins, signaling severe operational stress."

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Lazaro, Savant, and other Class members have suffered significant losses and damages.

ARGUMENT

## I.    LAZARO AND SAVANT SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Lazaro and Savant should be appointed Co-Lead Plaintiffs because they have timely filed a motion for appointment as Co-Lead Plaintiffs, have the largest financial interest in the Action to their knowledge, and otherwise strongly satisfy the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

6

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Lazaro and Savant satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

A.     Lazaro and Savant Are Willing to Serve as Class Representatives

On July 7, 2025, Pomerantz, counsel for plaintiff in the Action, caused the statutorily required Notice to be published via *ACCESS Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against iRobot and other defendants, and advising investors in iRobot securities that they had until September 5, 2025— *i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff.  *See* Hood Decl. Ex. B.

Lazaro and Savant have filed the instant motion pursuant to the Notice, and they have attached sworn Certifications attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary.  *See* Hood Decl., Ex. C. Accordingly, Lazaro and Savant satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

B.     Lazaro and Savant Have the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of their knowledge, Lazaro and Savant have the largest financial interest of any iRobot investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal

case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[1] these so-called *Lax* factors have been adopted and routinely applied by courts in this District. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004). Of the *Lax* factors, courts in this District tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See Nurlybaev*, 2017 WL 5256769, at *1; *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015).

During the Class Period, Lazaro and Savant collectively incurred losses of approximately $75,889 in connection with their Class Period transactions in iRobot securities. *See* Hood Decl., Ex. A. To the extent that Lazaro and Savant possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

C.    Lazaro and Savant Otherwise Satisfy the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiffs must

---

[1] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

"otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether lead plaintiff movants satisfy Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018)); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). In addition, "[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997), and *Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997)); *Olsten*, 3 F. Supp. 2d at 296. Moreover, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Lazaro and Savant.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960

9

F.2d 285, 291 (2d Cir. 1992)).  "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'"  *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Lazaro and Savant's claims are typical of those of the Class.  Lazaro and Savant allege, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning iRobot, or by omitting to state material facts necessary to make the statements they did make not misleading.  Lazaro and Savant, like other Class members, purchased iRobot securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions that drove iRobot's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Lazaro and Savant have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submit their choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  In addition to Pomerantz, Lazaro and Savant are also represented by the Bronstein, Gewirtz & Grossman, LLC law firm in this Action. There is no evidence of antagonism or conflict between Lazaro and Savant's interests and those of the Class.  Moreover, Lazaro and Savant have each submitted a sworn Certification declaring their respective commitment to protect the interests of the Class (*see* Hood Decl., Ex. C), and Lazaro and Savant's financial interest demonstrates that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.

Moreover, Lazaro and Savant constitute an appropriate movant duo of the type routinely appointed to serve as Co-Lead Plaintiffs.  *See, e.g.*, *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiffs); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Cendant*, 264 F.3d at 266 ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (citation omitted)).

Lazaro and Savant likewise have demonstrated their adequacy because they are a small and cohesive movant duo who have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of a Lead

11

Plaintiff appointed pursuant to the PSLRA, their decision to seek appointment jointly as Co-Lead Plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Hood Decl., Ex. D. Courts routinely appoint more than one investor as co-lead plaintiffs under such circumstances. *See, e.g.*, *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2014 WL 1395059, at *7-9, *12 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

>        D.    Lazaro and Savant Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption favoring Lazaro and Savant's appointment as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

>    (aa)    will not fairly and adequately protect the interests of the class; or

>    (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Lazaro and Savant's ability and desire to fairly and adequately represent the Class has been discussed above. Lazaro and Savant are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class. Accordingly, Lazaro and Savant should be appointed Co-Lead Plaintiffs for the Class.

12

II.     CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to Court approval. *See id.* § 78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Lazaro and Savant have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Hood Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *Id.*

13

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Lazaro and Savant's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously.  Thus, the Court may be assured that by approving Lazaro and Savant's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

CONCLUSION

For the foregoing reasons, Lazaro and Savant respectfully request that the Court issue an Order: (1) appointing Lazaro and Savant as Co-Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz as Lead Counsel for the Class.

Dated:  September 5, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ J. Alexander Hood II*
J. Alexander Hood II
Jeremy A. Lieberman
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com
tprzybylowski@pomlaw.com

*Counsel for Rita Lazaro and Vinayak Savant*
*and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296

14

peretz@bgandg.com

*Additional Counsel for Rita Lazaro and*
*Vinayak Savant*

<u>CERTIFICATE OF WORD COUNT</u>

The undersigned, counsel of record for Rita Lazaro and Vinayak Savant, certifies that this brief contains 4,154 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on September 5, 2025.

_/s/ J. Alexander Hood II_
J. Alexander Hood II

16